**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3982-21

IN THE MATTER OF
M.G.F.,[1]

an alleged incapacitated person.

_____

Submitted December 19, 2023 – Decided December 26, 2023

Before Judges Haas and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. 322318.

De Pierro Radding, LLC, attorneys for appellant A.V. (Giovanni De Pierro and Davide De Pierro, on the briefs).

Borteck & Czapek, PC, attorneys for respondent M.G.F. (Nicholas J. Dimakos, on the brief).

PER CURIAM

---

[1] We use initials to protect the privacy of M.G.F. and her family members. R. 1:38-3(e).

Plaintiff A.V. appeals from the Chancery Division's orders rejecting his attempt to have his adoptive mother, M.G.F., declared to be an incapacitated person and to have himself appointed as her guardian. On appeal, A.V. raises the following contentions:

> POINT I
>
> THE OCTOBER 5, 2021 DECISION BY THE COURT TO REJECT THE PHYSICIAN CERTIFICATIONS IN THE ORIGINAL VERIFIED COMPLAINT WITHOUT AN EX PARTE SHOWING ON GOOD CAUSE WAS IN VIOLATION OF COURT RULES.
>
> POINT II
>
> THE CHANCERY DIVISION'S DECISIONS ON JULY 29, 2022 DENYING [A.V.'S] MOTION TO RECONSIDER AND GRANTING [M.G.F.'S] MOTION TO RECONSIDER WERE ERRONEOUS IN THAT 1) [A.V.] PRODUCED MEDICAL EVIDENCE THAT [M.G.F.] SHOULD NOT HANDLE HER OWN FINANCIAL MATTERS AND 2) DISMISSAL OF THE AMENDED VERIFIED COMPLAINT VIOLATED RULE 4:86-4.

Having considered these arguments in light of the record and the applicable law, we affirm the dismissal of A.V.'s action substantially for the reasons set forth by the trial court in its determinations of these issues. We add the following comments.

M.G.F. is currently eighty-two years old and has lived in an assisted living facility for several years. A.V. is M.G.F.'s biological nephew and was the son of M.G.F.'s brother, S.V. In 2011, M.G.F. executed a power of attorney naming A.V. as her agent. Upon the death of S.V. in 2012, A.V. became the sole beneficiary named in M.G.F.'s last will and testament.[2] In 2013, M.G.F. adopted A.V.

M.G.F. certified that her relationship with A.V. "began deteriorating" in 2021 after he refused to answer questions she had about her assets. As a result, she revoked A.V.'s power of attorney. According to A.V.'s sister, J.P., M.G.F. called her in June 2021 and complained about A.V.'s lack of transparency concerning his handling of her finances. She asked J.P. to speak to A.V. about this problem. J.P. certified that A.V. told her on June 10, 2021 that he was aware that M.G.F. wanted to change her will, but that if M.G.F. attempted to do so, "he would have her declared incompetent."

A.V. disputes that he made that statement. But he almost immediately began preparing to bring an action to declare M.G.F. an incapacitated person and to be named her guardian.

---

[2] According to A.V., M.G.F. had assets totaling "approximately $4,420,000.00."

 A-3982-21

In this regard, a verified complaint seeking guardianship must be accompanied by certifications of two physicians who "have made a personal examination of the alleged incapacitated person not more than [thirty] days prior to the filing of the complaint." R. 4:86-2(b)(2). A.V. obtained reports from two physicians stating that M.G.F. was incapacitated. The first examination was conducted on June 27, 2021, just fifteen days after J.P. alleged A.V. told her of his plan to bring this action. The second examination was conducted on July 9, 2021.

However, A.V. did not file his verified complaint seeking to have M.G.F. declared an incapacitated person until September 16, 2021. Thus, the first physician's examination had occurred eighty-one days before the filing of the complaint. The second physician's examination took place sixty-nine days before the complaint was filed. Therefore, neither examination was performed within the thirty-day window provided by Rule 4:86-2(b)(2).

In a situation where, as here, the examinations are stale, Rule 4:86-2(b)(2) states that the thirty-day time requirement "may be relaxed by the court on an ex parte showing of good cause." (emphasis added). A.V. attempted to make such an ex parte showing on the same date he filed the complaint. His attorney submitted an ex parte certification to the court acknowledging that the

physician's "certifications are out of time under [Rule 4:86-2(b)(2)]." However, the attorney stated that "the untimeliness of the certifications was a result of administrative delays" and asked "that the resulting delay in preparing these pleadings for submission not necessitate the plaintiff incurring the additional time, difficulty and expense of new examinations of the alleged incapacitated person."

On October 5, 2021, the trial court rejected A.V.'s excuse for the late submission of the required reports and advised him that he was required to "file . . . updated physician certifications" if he wished to pursue the matter. The court also stated that "[t]his matter will remain pending the new physician certifications."

In Point I of his brief, A.V. argues that the trial court erred by rejecting the stale physician certifications he submitted with his complaint. We disagree.

We give great deference to a trial court's findings and conclusions. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974). We do not "engage in an independent assessment of the evidence as if [we] were the court of first instance." State v. Locurto, 157 N.J. 463, 471 (1999). We will not disturb the trial court's findings "unless they are so clearly insupportable as to result in their denial of justice." Estate of Ostlund v. Ostlund, 391 N.J. Super.

390, 400 (App. Div. 2007). However, we review de novo the trial court's interpretation of the law. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

"Whenever the words 'good cause' appear in statutes or rules relating to the opening of defaults they mean (in the absence of other modifying or controlling words) a substantial reason that affords legal excuse for the default." Nemeth v. Otis Elevator Co., 55 N.J. Super. 493, 497 (App. Div. 1959). Here, the only explanation A.V. provided to excuse his failure to comply with Rule 4:86-2(b)(2) was unspecified "administrative delays." A.V.'s claim was plainly not a "substantial reason" justifying the submission of the patently stale reports. Ibid. Thus, we conclude that the trial court correctly determined that A.V. did not demonstrate the good cause necessary to permit the relaxation of the thirty-day time requirement of Rule 4:86-2(b)(2).

A.V. now alleges that the trial court did not provide him with an opportunity to expand upon his claim that "administrative delays" caused his recalcitrance. But plaintiff not only had the opportunity to make an ex parte showing under Rule 4:86-2(b)(2), he took full advantage of it by submitting an ex parte certification from his attorney at the time he filed his complaint. A.V.

A-3982-21

simply failed to show that there was any good cause to excuse his failure to comply with the thirty-day filing requirement.

A.V. also asserts for the first time on appeal that the "administrative delay" that led to his late filing was the fact that his first attorney "withdrew her representation abruptly, leaving [him] with very little time to find new counsel to file the complaint." Because A.V. did not raise this argument before the trial court, we need not consider it here. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). In any event, this allegation is not supported by any competent evidence in the appellate record and does not justify his attempt to use stale certifications to take control of M.G.F.'s financial and personal affairs. Therefore, we reject the contentions A.V. raises in Point I of his brief.

Turning to Point II, A.V. alleges that the trial court erred by dismissing his complaint on the parties' cross-motions for reconsideration. The factual background for these decisions can be briefly stated.

After the court ordered A.V. to obtain new physician certifications, he filed an amended complaint seeking the same relief against M.G.F. on October 18, 2021. However, he did not submit two timely certifications as required by Rule 4:86-2(b)(2). Instead, as permitted by Rule 4:86-2(c)(2), A.V. filed certifications from the two physicians he had previously used stating that they

attempted to examine M.G.F. within thirty days of the filing of the amended complaint, but that she had refused to cooperate with their requests. A.V. also sought an order appointing a temporary guardian for M.G.F. and requiring her to undergo the examinations he needed to support his action to have her declared an incapacitated person and to take control of her assets and personal affairs.

On February 22, 2022, the trial court granted A.V.'s motion and appointed a temporary guardian of M.G.F.'s person and estate for the purpose of arranging the medical examinations A.V. requested. Three months later, the guardian reported to the court that based on her meetings with M.G.F., the guardian did "not believe [M.G.F.] to be unfit and unable to govern herself and to manage her affairs[.]" The guardian also stated that M.G.F. continued to refuse to be examined by A.V.'s doctors. The guardian asked the court for guidance on how to proceed with the matter and for permission to close out one of M.G.F.'s brokerage accounts.

Following a case management conference on June 8, 2022, the trial court issued an order permitting the guardian to close the brokerage account. A.V. and M.G.F. filed cross-motions for reconsideration of that order. A.V. objected to the closure of the brokerage account and asked the court to force M.G.F. to

8

submit to the two medical examinations. M.G.F. asked for an order dismissing A.V.'s complaint.

After conducting oral argument on July 29, 2022, the trial court granted M.G.F.'s motion and dismissed A.V.'s complaint. The court denied A.V.'s motion for reconsideration as moot.

In its thorough July 29, 2022 oral decision, the trial court explained that it had reconsidered its earlier decision to force M.G.F. to undergo the medical examinations. The court stated that once it denied A.V.'s request to rely upon stale information on October 5, 2021, it should have dismissed the complaint at that time rather than letting it proceed. The court also pointed out that even if it had been able to consider the out-of-time physician reports, they were insufficient to support a declaration that M.G.F. was an incapacitated person in need of a guardian.

Specifically, the trial court found that one of the physicians had examined M.G.F. using a Facetime app rather than by performing an in-person examination. That physician also relied upon A.V. for a substantial amount of the information set forth in the report. In addition, the court found that the second physician determined that M.G.F. scored a 27/30 on the Mini-Mental

Status Examination and the Montreal Cognitive Assessment, which was not indicative of a person who lacks the capacity to make her own decisions.

In sum, the trial court found that M.G.F. "has effectively challenged [A.V.'s] application from its inception. She's never wavered. Her position's been consistent through her attorney and the temporary guardian ad litem and she's presenting herself as an individual who's aware of the nature of these proceedings and the decisions she's making both medically and financially." Therefore, the court dismissed A.V.'s unsupported complaint.

In Point II, A.V. argues that the trial court should not have reconsidered its prior decision to keep the matter open and to force M.G.F. to undergo examinations. Again, we disagree.[3]

Rule 4:42-2(b) states that interlocutory orders are "subject to revision at any time before the entry of final judgment in the sound discretion of the court

---

[3] A.V.'s argument in Point II is largely based on his citation to two unpublished Appellate Division decisions unrelated to this case. However, the facts of those cases are dissimilar to the circumstances presented here. More importantly, A.V.'s reliance on the unpublished cases in this appeal is misplaced because pursuant to Rule 1:36-3, the cases have no precedential value and are not binding on any court. As we stated in Badiali v. New Jersey Mfrs. Ins. Grp., 429 N.J. Super. 121, 126 n. 4 (App. Div. 2012), aff'd, 220 N.J. 544 (2015), "as a general matter, unpublished opinions are not to be cited by any court absent certain specified circumstances." None of those circumstances apply to the unrelated, unpublished cases on which A.V. relies.

A-3982-21

in the interest of justice."  See also Lombardi v. Masso, 207 N.J. 517, 536 (2011) (reconsideration of, and grant of relief from, an interlocutory order before final judgment is a matter committed to the sound discretion of the trial court); Lawson v. Dewar, 468 N.J. Super. 128, 134 (App. Div. 2021).

Applying that standard, we are satisfied that the trial court properly exercised its discretion by reconsidering its prior decision and determining that A.V.'s complaint should be dismissed.  A.V. failed to present timely medical examinations in support of either of his complaints.  Even when the trial court considered the untimely physician reports, it found them to be unreliable.  On the other hand, M.G.F. presented herself as a capable individual who was oriented to person, place, and time in her discussions with the temporary guardian.  Under these circumstances, the court was fully justified in reconsidering its prior decisions and dismissing this action.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-3982-21